**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 07 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**CAT CLAWS, INC.,** an Arkansas
corporation

                            **Plaintiff**

v.

Case No. 4:16-cv-733-SWW

**BIG LOTS STORES, INC.,** an
Ohio corporation doing business
as Big Lots!, **PET LUV PRODUCTS
LLC,** an Ohio limited liability company

This case assigned to District Judge _Wright_
and to Magistrate Judge _Ray_

                          **Defendants**

## VERIFIED COMPLAINT

Plaintiff Cat Claws, Inc. ("Plaintiff" and/or "CCI"), by and through its attorneys, Calhoun Law Firm, for its Complaint against Defendants Big Lots Stores, Inc. and Pet Luv Products LLC, collectively "Defendants", hereby alleges as follows:

## I.  THE PARTIES

1.     Plaintiff is a corporation duly organized and existing under the laws of the State of Arkansas, with its principal place of business located in Morrilton, Arkansas.

2.     Upon information and belief, Defendant Big Lots Stores, Inc. (hereinafter "BLSI") is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at 300 Phillipi Road in Columbus, Ohio; said defendant maintains places of business, engages in infringing misconduct, and otherwise transacts business on a regular basis in at least twelve (12) retail stores in Arkansas, including in this judicial district at 150 E Oak St. in Conway, AR. Said defendant also maintains a registered agent in Little Rock in this judicial district.

3.      Upon information and belief, Defendant Pet Luv Products LLC ("Pet Luv") is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business located at 241 Whaley Road, Peninsula, OH 44264.

4.      Each Defendant is joined because a right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and a question of law or fact common to all Defendants will arise in the action.

5.      Each Defendant may be jointly and severally liable for the damages resulting from the acts or omissions of the other Defendant herein.

## II. JURISDICTION AND VENUE

6.      This is a civil action for design patent infringement (35 U.S.C. §§ 1 et seq.), trademark infringement in violation of the Lanham Act (15 U.S.C. § 1051, et seq.) and Arkansas common law, and unfair competition under Arkansas common law and the Lanham Act.

7.      Since this action arises under the patent laws of the United States, 35 U.S.C. §§ 271 et seq., this Court has jurisdiction over the patent claims under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court also has original subject matter jurisdiction over Lanham Act claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

9.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy.

10.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

### III. COMMON FACTS

11.     In general, this case involves Defendants' unauthorized importation and sale of a product commonly referred to as a cat scratcher, and the unauthorized use of Plaintiff's name/trademark "Cat Claws" on the product.

12.     Since the 1980s, Plaintiff has been in the business of designing, manufacturing and selling cat scratcher products under the mark Cat Claws.

13.     Plaintiff is the owner of U.S. Trademark Registration No. 4,571,394 (the "Registration") issued on 22 July 2014 by the U. S. Patent & Trademark Office ("USPTO") for Plaintiff's trademark "Cat Claws" (& design), for use in connection with cat scratching pads; a copy of said registration is Attachment A hereto.

14.     Plaintiff is the owner of U.S. Trademark Registration No. 2,990,971 issued on 6 September 2005 by the USPTO for Plaintiff's trademark "Cat Claws" in standard character format (the "Trademark") for use in connection with cat scratching pads, which registration has been cancelled because Plaintiff inadvertently failed to submit maintenance filings; however, another such application to register the Trademark is currently pending at the USPTO (Application No. 87/191,406).

15.     Plaintiff has used and promoted its Cat Claws Trademark in connection with cat scratching pads, continuously since the 1980s.

16.     Plaintiff is owner of U.S. Design Patent No. D627,112 for a Cat Scratcher (the "Fish Design Patent"); a copy of said patent is Attachment B hereto.

17.     Since at least as early as March of 2008, Plaintiff has sold a product embodying the Fish Design Patent, including a stylistic depiction of fishbones on both lateral sides of the product

(the "Fish-bones Design"), together with Plaintiff's registered Trademark; a copy of a photograph of said product (the "Fish-bones Product") is Attachment C hereto.

18.    Plaintiff's Fish-bones Product is manufactured in the United States.

19.    Defendant BLSI has sold a product labeled "Cat Cardboard Scratcher" (the "Fish-bones Knockoff") obtained from Defendant Pet Luv, that is virtually identical to Plaintiff's Fish-bones Product; a copy of a photograph of the Fish-bones Knockoff is Attachment D hereto.

20.    The Fish-bones Knockoff is manufactured in and imported from China.

21.    Defendants' Fish-bones Knockoff infringes Plaintiff's Fish Design Patent.

22.    The "Cat Claws" trademark appearing on both lateral sides of the Fish-bones Knockoff infringes Plaintiff's registered Trademark and common law trademark rights.

23.    The Fish-bones Design and "Cat Claws" trademark appearing on both lateral sides of the Fish-bones Knockoff are confusingly similar to Plaintiff's Fish-bones Design and registered Trademark, and constitute an attempt to pass off Defendants' Fish-bones Knockoff for Plaintiff's Fish-bones Product.

**COUNT 1: PATENT INFRINGEMENT (35 U.S.C. § 271(a))**

24.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 23 of this Complaint, as though set forth verbatim herein.

25.    Plaintiff's Fish Patent is valid and enforceable.

26.    Without Plaintiff's authorization, each Defendant makes, uses, sells, offers for sale, and/or imports the Fish Knockoff, that infringes the Fish Patent.

27.    Each Defendant's misconduct alleged herein interferes with Plaintiff's sales of its products.

28.     The amount of money damages which Plaintiff has suffered due to Defendants' misconduct alleged herein cannot be determined without an accounting, but Plaintiff is entitled to at least a reasonable royalty for all Knockoff Products made, used, sold, offered for sale, and/or imported by Defendants.

29.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff has been damaged in amounts to be proven at trial, entitling Plaintiff to recover its actual damages, all gains and profits realized by or through both Defendants as a result of the misconduct alleged herein, all costs and expenses incurred by Plaintiff in this action (including reasonable attorneys' fees), and an accounting of all gains and profits realized by or through each Defendant as a result of the misconduct alleged herein.

### COUNT 2: INDUCEMENT OF PATENT INFRINGEMENT (35 U.S.C. § 271(b))

30.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 23 of this Complaint, as though set forth verbatim herein.

31.     Upon information and belief, the acts actually carried out by one Defendant directly infringe the Patents.

32.     Upon information and belief, the second Defendant took action during the time the Fish Design Patent was in force, intending to cause the infringing acts by the first Defendant.

33.     Upon information and belief, the first Defendant was aware of the Fish Design Patent and knew that the acts, if taken, would constitute infringement of the Fish Design Patent, or the first Defendant believed there was a high probability that the acts, if taken, would constitute infringement of the Fish Design Patent but deliberately avoided confirming that belief.

34.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff has been damaged in amounts to be proven at trial, entitling Plaintiff to recover its actual

damages, all gains and profits realized by or through both Defendants as a result of the misconduct alleged herein, all costs and expenses incurred by Plaintiff in this action (including reasonable attorneys' fees), and an accounting of all gains and profits realized by or through each Defendant as a result of the misconduct alleged herein.

## COUNT 3: TRADEMARK INFRINGEMENT

35.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 23 of this Complaint, as though set forth verbatim herein.

36.     Plaintiff owns a protectable interest in its registered Trademark.

37.     Plaintiff has demanded that Defendants cease use of Plaintiff's Registered Trademark.

38.     Defendants continue to use Plaintiff's registered Trademark in connection with the Fish-bones Knockoff.

39.     Defendants' misconduct alleged herein constitutes use in commerce of Plaintiff's registered Trademark without Plaintiff's consent, in connection with the sale, distribution, offering for sale, or advertising of goods or services that is likely to cause consumer confusion or mistake or deception as to the source or origin of such goods or services.

40.     Defendants' misconduct alleged herein constitutes use in commerce of Plaintiff's registered Trademark without Plaintiff's consent, in connection with the sale, distribution, offering for sale, or advertising of goods or services that is likely to cause consumer confusion or mistake or deception as to sponsorship or approval of such goods or services by Plaintiff.

41.     Defendants' unauthorized use of Plaintiff's registered Trademark will likely cause consumer confusion, mistake or deception in violation of Plaintiff's rights under 15 U.S.C. §1114 and 1125, and under Arkansas common law.

42.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it cannot be adequately compensated by money damages, entitling Plaintiff to preliminary and permanent injunctive relief enjoining Defendants from continuing the misconduct alleged herein.

43.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff is entitled to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of the action.

44.     Some of the infringing misconduct of Defendants alleged herein has been committed intentionally, with knowledge of Plaintiff's rights, willfully and in reckless disregard for the harm it would inflict upon Plaintiff, making this an exceptional case under 15 U.S.C. §1117(a) and entitling Plaintiff to an award of attorneys' fees incurred herein.

## COUNT 4: UNFAIR COMPETITION

45.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 23 of this Complaint, as though fully set forth herein.

46.     Defendants jointly and severally have unfairly competed with Plaintiff by copying well-known patented features of Plaintiff's and by otherwise causing customer confusion.

47.     Defendants' misconduct alleged herein constitutes use in commerce of Plaintiff's Trademark without Plaintiff's consent, in connection with the sale, distribution, offering for sale, or advertising of goods or services that is likely to cause consumer confusion or mistake or deception as to the source or origin of such goods or services.

48.     Defendants' misconduct alleged herein constitutes use in commerce of Plaintiff's Trademark without Plaintiff's consent, in connection with the sale, distribution, offering for sale,

or advertising of goods or services that is likely to cause consumer confusion or mistake or deception as to sponsor or approval of such goods or services by Plaintiff.

49.     Defendants' misconduct alleged herein constitutes unfair competition in violation of Arkansas common law and 15 U.S.C. § 1125(a), because said misconduct is likely to confuse or deceive consumers into purchasing Defendants' products under the mistaken belief that they were provided, sponsored or endorsed by Plaintiff, or otherwise affiliated, connected or associated with Plaintiff.

50.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it cannot be adequately compensated by money damages, entitling Plaintiff to a restraining order and preliminary and permanent injunctive relief restraining and enjoining Defendants from continuing the misconduct alleged herein.

51.     As a direct and proximate result of the misconduct of Defendants alleged herein, Plaintiff is entitled to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of the action.

52.     Some of the infringing misconduct of Defendants alleged herein was been committed intentionally, with knowledge of Plaintiff's rights, willfully and in reckless disregard for the harm it would inflict upon Plaintiff, making this an exceptional case under 15 U.S.C. §1117(a) and entitling Plaintiff to an award of attorneys' fees incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a jury trial and prays for judgment jointly and severally against each Defendant, and respectfully prays for the following relief:

(a) a temporary restraining order, preliminary injunction and permanent injunction restraining and enjoining Defendants and each Defendant's employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries and assigns, and all those in concert or participation with any of them from:

(1)     making, importing, offering for sale or selling any product or product design infringing Plaintiff's patented designs;

(2)     imitating, copying, using, reproducing, registering, attempting to register and/or displaying any mark so resembling Plaintiff's Trademark as to be likely to cause confusion, mistake or deception therewith; and

(3)     using any false description or representation or any other thing calculated or likely to cause consumer confusion, deception or mistake in the marketplace with regard to Plaintiff's Trademark; and

(b) an order directing that Defendants remove all signage (including digital/electronic indicia) and deliver up for destruction all materials in his/her/its possession or custody or under their respective control that infringe Plaintiff's Trademark, including, without limitation, all inventory, advertising and promotional materials;

(c) an order requiring Defendants to publish corrective advertising in a form, manner and frequency that is acceptable to the Court, publicizing the fact that Cat Claws is Plaintiff's Trademark, that Defendants' prior use was not authorized, and that Defendants will no longer use Cat Claws as a trademark or otherwise;

(d) an order directing that Defendants file with the Court, and serve upon counsel for Plaintiff within thirty (30) days after the entry of such order or judgment, a report in writing and

under oath setting forth in detail the manner and form in which Defendants have complied with this Court's orders;

(e) an award of damages, including enhanced, exemplary and punitive damages;

(f) an award of prejudgment and post judgment interest;

(g) an award of Plaintiff's costs and expenses incurred herein, including (without limitation) Plaintiff's attorneys' fees; and

(h) all other relief, in law or in equity, to which Plaintiff may be entitled, or which the Court deems just and proper.

Respectfully submitted by,

CALHOUN LAW FIRM
P.O. Box 251504
Little Rock, AR 72225
Telephone: 501-374-1700
Telefax: 501-801-1193

/Joe D. Calhoun [Ark. Bar No. 85021]
Joe.Calhoun@CalhounLawFirm.com
Attorney for Plaintiff

## **VERIFICATION**

I, Jill Seliskar, having personally reviewed the allegations contained in the above stated Verified Complaint, do hereby verify under oath that the allegations contained therein are, to the best of my knowledge, information and belief, true and correct.

Cat Claws, Inc.

C. Jill Seliskar, President

State of Arkansas )
                        )
County of _Conway_ )

On this the _5_ day of October, 2016, before me, _Danielle Bell_, the undersigned notary, personally appeared JILL SELISKAR, and being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing his name.

In witness whereof I hereunto set my hand and official seal.

Notary Public
My Commission Expires: _10-02-2025_

[SEAL]

> OFFICIAL SEAL
> DANIELLE L. BELL
> CONWAY COUNTY
> NOTARY PUBLIC - ARKANSAS
> My Commission Expires 10/02/2025
> Commission No. 12695844

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,571,394**

**Registered July 22, 2014**

**Int. Cl.: 20**

**TRADEMARK**

**PRINCIPAL REGISTER**

CAT CLAWS, INC. (ARKANSAS CORPORATION)
1004 BROADWAY
MORRILTON, AR 72110

FOR: CAT SCRATCHING PAD, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 9-1-2007; IN COMMERCE 9-1-2007.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CAT" , APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDS "CAT CLAWS" WITH A KITTEN INSERTED BETWEEN THE TWO WORDS.

SER. NO. 86-121,270, FILED 11-18-2013.

KATHLEEN LORENZO, EXAMINING ATTORNEY



*Michelle K. Lee*

**Deputy Director of the United States**
**Patent and Trademark Office**



EXHIBIT

A

US00D627112S

(12) **United States Design Patent**
Seliskar

(10) Patent No.: **US D627,112 S**
(45) Date of Patent: ✶✶ **Nov. 9, 2010**

(54) **CAT SCRATCHER**

(75) Inventor: **Carolyn Jill Seliskar**, 114 Mount Zion Loop, Morrilton, AR (US) 72110

(73) Assignee: **Carolyn Jill Seliskar**, Morrilton, AR (US)

(✶✶) Term: **14 Years**

(21) Appl. No.: **29/332,783**

(22) Filed: **Feb. 25, 2009**

(51) **LOC (9) Cl.** ................................................... **30-99**
(52) **U.S. Cl.** ..................................... **D30/160**; D6/349
(58) **Field of Classification Search** ................ 119/702, 119/706–711, 28.5; D30/118–119, 160; D21/405–407, 465, 467, 474–476; D24/194; 446/227; D6/349, 382, 388, 597–598, 601
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,013,272 | A | ✶ | 5/1991 | Watkins | 441/127 |
| D334,637 | S | ✶ | 4/1993 | Mitchell | D30/160 |
| D372,805 | S | ✶ | 8/1996 | Bonaddio et al. | D6/375 |
| 5,592,901 | A | ✶ | 1/1997 | Birmingham | 119/706 |
| 5,682,633 | A | ✶ | 11/1997 | Davis | 5/636 |
| D448,228 | S | ✶ | 9/2001 | Davis et al. | D6/601 |
| D466,749 | S | ✶ | 12/2002 | O'Quinn | D6/601 |
| D501,064 | S | ✶ | 1/2005 | Williams | D30/160 |
| D555,299 | S | ✶ | 11/2007 | Tsengas | D30/160 |
| D557,464 | S | ✶ | 12/2007 | Novak | D30/160 |
| D589,657 | S | ✶ | 3/2009 | Lamstein | D30/118 |
| D610,316 | S | ✶ | 2/2010 | Handal | D30/160 |

✶ cited by examiner

*Primary Examiner*—Cathy Anne MacCormac

(57) **CLAIM**

The ornamental design for a cat scratcher, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view a cat scratcher showing my new design;

FIG. **2** is a right side elevational view thereof, the let side being a mirror image of the right side shown;

FIG. **3** is a top view thereof;

FIG. **4** is a front view thereof; and,

FIG. **5** is a rear view thereof.

**1 Claim, 5 Drawing Sheets**





EXHIBIT
**B**



FIG. 1



FIG. 2



**FIG. 3**



# FIG. 4

**U.S. Patent**          **Nov. 9, 2010**          **Sheet 5 of 5**          **US D627,112 S**



FIG. 5



EXHIBIT



**Directions:**

1. **DO NOT remove bottom sheet. Sheet will prevent catnip from falling through.**

2. Spread catnip on top of the center of the scratcher.

3. Let the cat explore the scratcher.

**Helpful Hints:**

- Give your cat time to explore the scratcher. Most cats will be attracted to the catnip and will investigate the scratcher themselves.

- Encourage scratching on the pad by playing with toys on or near the pad, scenting the pad with catnip, or using praise and food rewards when the cat scratches

- The scratcher will provide months of scratching with normal use. When scratcher becomes worn, replace with a new one.

- Don't be surprised if your cat sleeps on the scratcher, it's a great place to nap.

Product not intended for human use!
DO NOT sit or stand on product! When product wears replace!

**www.catclaws.com**



**EXHIBIT**

**D**

# pet luv™

## Cat Cardboard Scratcher

- Cardboard scratcher helps to groom claws
- Sprinkle with select catnip (included) to promote scratching
- Cool curves keep cats interested

⚠ **WARNING:**
For pet only. Not for children.
Remove plastic wrap. Place scratcher in desired location. Sprinkle the scratcher with catnip.

Distributed By: Big Lots Stores, Inc.
P.O. Box 28523, Columbus, OH 43228-0523
Ver1009882 MADE IN CHINA ITEM#HWKT160012



BIG LOTS.™

$10

81032750

810311275005